UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

FILED IN THE U.S. DISTRICT COURT EASTERN DISTRICT OF WASHINGTON Aug 31, 2017 SEAN F. McAVOY, CLERK

| | |
|---|---|
| JAMES METTE,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 1:16-CV-03142-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney D. James Tree represents James Brian Mette (Plaintiff); Special Assistant United States Attorney L. Jamala Edwards represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 4. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on March 15, 2012, alleging disability since

March 7, 2009 due to Crohn's disease, ulcerative colitis, major depressive disorder, posttraumatic stress disorder (PTSD), obsessive compulsive disorder (OCD), severe chronic gastrointestinal problems, and regular/irregular heartbeat. Tr. 283-292, 328, 337. The applications were denied initially and upon reconsideration. Tr. 162-169, 171-183. Administrative Law Judge (ALJ) Stephanie Martz held a hearing on April 17, 2014 and took testimony from Plaintiff. Tr. 46-57. The ALJ then postponed the hearing to allow for additional evidence to be gathered and associated with the record. Tr. 54-56. The ALJ held a second hearing on July 25, 2014 and took additional testimony from Plaintiff and vocational expert, Trevor Duncan. Tr. 58-89. The ALJ issued an unfavorable decision on August 29, 2014. Tr. 18-38. In her decision, the ALJ defined the relevant time period as May 7, 2011 through the date of the decision, because Plaintiff had prior DIB and SSI applications that were denied on May 6, 2011. Tr. 18. The Appeals Council denied review on May 19, 2016. Tr. 1-6. The ALJ's August 29, 2014 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 22, 2016. ECF No. 1.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 37 years old on May 7, 2011. Tr. 283. The highest grade Plaintiff completed was the ninth in 1988. Tr. 329. He reported that he stopped working in March of 2009 due to his conditions. Tr. 328. Plaintiff's work history includes the positions of grill cook, grocery stocker, pizza cook, prep cook, and selector. Tr. 316, 329.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show

that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 29, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 7, 2011. Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments: affective disorder, anxiety disorder, and polysubstance use disorder. Tr. 21.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 28.

At step four, the ALJ assessed Plaintiff's residual function capacity to perform a full range of work at all exertional levels with the following non-exertional limitations: "He can understand, remember, and carry out simple routine tasks. He needs a routine and predictable work environment. He can have occasional contact with coworkers and supervisors but should not work with the general public." Tr. 29. The ALJ identified Plaintiff's past relevant work as short order cook, stock clerk, fast food cook, kitchen helper, industrial cleaner, saw operator, molder operator, and cashier II. Tr. 36. She concluded that Plaintiff was not able to perform any of his past relevant work. *Id.*

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the

national economy Plaintiff could perform, including the jobs of production assembler, hand packager, and housekeeper. Tr. 38. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from May 7, 2011, through the date of the ALJ's decision, August 29, 2014. *Id*.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to find Plaintiff had any physical impairments at step two and (2) failing to accord proper weight to the opinions if Thomas Genthe, Ph.D. and Angelo Ballasiotes, PharmD.

**DISCUSSION**

**A. Step Two**

Plaintiff argues that the ALJ errored at step two by finding that he did not have any medically determinable severe physical impairments. ECF No. 13 at 14-19.

Step-two of the sequential evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id*. at 1290. The step-two analysis is "a *de minimis* screening device to dispose of groundless claims." *Id*. In her step two determination, the ALJ found that the evidence did not establish the existence of a medically determinable impairment. Tr. 27.

An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908 (2016).

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." *Id.*[1] The regulations also stated that symptoms will not be found to affect a claimant's ability to do basic work activities, "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §§ 404.1529(b), 416.929(b) (2016).[2] Signs are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements." 20 C.F.R. §§ 404.1528(b), 416.928(b) (2016).[3] Laboratory findings are defined as "anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic

---

[1]As of March 27, 2017 20 C.F.R. §§ 404.1508, 416.908 was removed and reserved and 20 C.F.R. §§ 404.1521, 416.921 was revised to state the following:

> Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

[2]This regulation was also changed as of March 27, 2017, however the quoted material remains.

[3]As of March 27, 2017, 20 C.F.R. §§ 404.1528, 416.928 was removed and reserved and 20 C.F.R. §§ 404.1502, 416.902 was amended to define signs as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements."

techniques." 20 C.F.R. §§ 404.1528(c), 416.928(c) (2016).[4]

The ALJ found that Plaintiff did not have a physical medically determinable impairment because he did not have a diagnosis of Crohn's disease for his abdominal symptoms, stating that "'Abdominal pain' is not a diagnosis." Tr. 27. To summarize the extensive record in this case, the ALJ provided a chart including the date, location of treatment, citation to the record, and "Complaints/Assessment." Tr. 22-26. The ALJ failed to consider the medical signs and laboratory findings associated with Plaintiff's complaints of abdominal pain. *See* Tr. 27. This is error; therefore, the question becomes whether this is harmful error. An ALJ's error can be considered harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Social Security Ruling (S.S.R.) 96-4p states "In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process." However, that is not the case here. The ALJ referenced the CT Plaintiff received in November of 2011 focusing on the provider's diagnosis of "Possible early diverticulitis," to the exclusion of the objective results. Tr. 1410. The CT scan as read by Joseph Gouveia, M.D. showed "The bowel pattern demonstrates some mucosal thickening through the sigmoid portion of the colon with a few small diverticula," and the impression included "findings suggest diverticulosis of the sigmoid colon." Tr.

---

[4]As of March 27, 2017, 20 C.F.R. §§ 404.1528, 416.928 was removed and reserved and 20 C.F.R. §§ 404.1502, 416.902 was amended to define laboratory findings to as "one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques."

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

1432. Additionally, Dr. Gouveia found no evidence of definite Crohn's disease. *Id*. The ALJ also relied on a colonoscopy performed by Robert Williams, M.D. and his statement that there was no evidence of Crohn's diseases. Tr. 27. However, testing showed the presence of a benign precancerous adenoma. Tr. 1638.

No Crohn's disease does not equal no medically determinable impairment. Considering there are medical signs and laboratory findings that have lead medical providers to consider diverticulitis and a precancerous adenoma, this case is not lacking medical findings. Thus, there may be a medically determinable impairment, albeit undefined, because medical signs and laboratory findings show some kind of abnormality. Whether or not that abnormality can be considered severe is unaddressed in the ALJ's decision because she refused to accept the medical signs and laboratory findings. As such, this is harmful error.

The case is remanded for the ALJ to address the medical signs and laboratory findings contained in the record and call a medical expert at a new hearing to determine if there is a physical medically determinable impairment and if any physical medical determinable impairment is severe.

**B.    Medical Opinions**

Plaintiff challenges the ALJ's treatment of opinions of Thomas Genthe, Ph.D. and Angelo Ballasiotes, Pharm.D. ECF No. 13 at 6-14.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the

opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-831. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

1. **Thomas Genthe, Ph.D.**

On April 6, 2014, Dr. Genthe completed a Psychological/Psychiatric Evaluation for the Washington State Department of Social and Health Services (DSHS). Tr. 1883-1889. He diagnosed Plaintiff with schizoaffective disorder, social anxiety disorder, OCD, and polysubstance use disorder in sustained remission. Tr. 1885. He opined that Plaintiff had a severe[5] limitation in the abilities to complete a normal work day and work week without interruptions from psychologically based symptoms and to maintain appropriate behavior in a work setting. Tr. 1886. He also opined that plaintiff had a marked[6] level of impairment in the abilities to understand, remember, and persist in tasks by following detailed instructions, to perform activities within a schedule, maintain regular attendance,

---

[5] "'Severe' means the inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop." Tr. 1885.

[6] "'Marked' means a very significant limitation on the ability to perform one or more basic work activity." Tr. 1885.

and be punctual within customary tolerances without special supervision, to adapt to changes in a routine work setting, and to communicate and perform effectively in a work setting. Tr. 1885-1886. Additionally, Dr. Genthe opined that Plaintiff had a moderate[7] limitation in the abilities to understand, remember, and persist in tasks by following very short and simple instructions, to learn new tasks, to perform routine tasks without special supervision, to make simple work-related decisions, to be aware of normal hazards and take appropriate precautions, to ask simple questions or request assistance, and to set realistic goals and plan independently. *Id*. He further stated that Plaintiff's ability to interact appropriately with the public, to get along with coworkers and/or peers, and to respond appropriately to criticism from supervisors was assessed as fair. Tr. 1886.

The ALJ gave Dr. Genthe's opinion no weight because (1) the marked and severe limitations he assessed were out of proportion to the medical evidence, (2) he relied on Plaintiff's unreliable self-reports, and (3) he did not have the longitudinal history of Plaintiff's impairments and knowledge of his substance abuse. Tr. 35.

The ALJ's first reason for rejecting Dr. Genthe's opinion, that the opined limitations were out of proportion with the medical evidence, is not legally sufficient. The ALJ failed to state what evidence in the record was inconsistent with specific limitations. Tr. 35. The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-422.

The ALJ's second reason for rejecting Dr. Genthe's opinion, that he relied on Plaintiff's unreliable self-reports, is legally sufficient. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti v. Astrue*, 533 F.3d at 1041. But

---

[7]"'Moderate' means there are significant limits on the ability to perform one or more basic work activity." Tr. 1885.

the ALJ must provide the basis for his conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ states "Dr. Genthe admitted he did not have access to the claimant's treatment records. Thus, . . . he relied on the claimant's presentation and his subjective report of his medical history, symptoms, and limitations." Tr. 35. Plaintiff did not challenge the ALJ's adverse credibility determination. ECF No. 13. As such, the ALJ second reason was legally sufficient.

The ALJ's third reason for rejecting Dr. Genthe's opinion, that he did not have the longitudinal history of Plaintiff's impairments and knowledge of his substance abuse, is legally sufficient. The ALJ accurately represented Plaintiff's inconsistent statements regarding drug and alcohol use. Tr. 35. The fact that Dr. Genthe could not take into account the critical issue of Plaintiff's drug and alcohol use, because Plaintiff failed to accurately report them, casts doubt on his diagnoses and assessments of Plaintiff's functional limitations. Plaintiff argues that drug and alcohol use were not material to Plaintiff's mental health limitations because all his urine screening were negative for substances. ECF No. 13 at 10. However, the extent to which a medical source is familiar with the other information in a claimant's case record is a factor the ALJ is to consider when weighing medical opinions. 20 C.F.R. §§ 404.1527(c)(6); 416.927(c)(6) (2016).[8] Considering Dr. Genthe was unfamiliar with the evidence showing Plaintiff's abuse of controlled substances and longitudinal record, the ALJ did not error in providing his opinion less weight.

While the ALJ errored in his first reason for providing Dr. Genthe's opinion less weight, he provided other legally sufficient reasons to support his determination. This case is being remanded to address the physical impairments at step two, the ALJ need not address the psychological opinions upon remand if she

---

[8]These regulations were amended as of March 27, 2017, however the relevant text remains.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

finds that the step two physical impairments will not have an effect on Plaintiff's the psychological limitations.

### 2. Angelo Ballasiotes, Pharm.D.

On September 24, 2013, Dr. Ballasiotes completed a mental residual functional capacity assessment. Tr. 1879-1881. He opined that Plaintiff had a severe[9] limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 1880. He found Plaintiff was markedly[10] limited in the abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to interact appropriately with the general public, to ask simple questions or request assistance, to be aware of normal hazards and take appropriate precautions, and to travel in unfamiliar places or use public transportation. Tr. 1879-1881. Dr. Ballasiotes also found that Plaintiff was moderately[11] limited in the abilities to remember locations and work-like procedures, to understand and remember very short and simple instructions, to understand and remember detailed instructions, to carry out very short simple instructions, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to

---

[9] Severely limited is defined as the "[i]nability to perform one or more basic work-related activities." Tr. 1879.

[10] Markedly limited is defined as "[v]ery significant interference with basic work-related activates i.e., unable to perform the described mental activity for more than 33% of the work day." Tr. 1879.

[11] Moderately limited is defined as "[s]ignificant interference with basic work-related activities i.e., unable to perform the described mental activity for at least 20% of the work day up to 33% of the work day." Tr. 1879.

sustain an ordinary routine without special supervision, to accept instructions and respond appropriately to criticism from supervisors, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and to set realistic goals or make plans independently of others. *Id*. He concluded the opinion by stating "[t]his document was completed with input from the client, Mr. James Mette, with assistance from his mental health case manager." Tr. 1881. The ALJ gave Dr. Ballasiotes's opinion no weight because (1) the marked and severe limitations were out of proportion to the treatment records and (2) the form was completed with input from Plaintiff. Tr. 35.

Dr. Ballasiotes is a pharmacist, not a medical doctor, and, therefore, is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2016).[12] Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a pharmacist. 20 C.F.R. §§ 404.1513, 416.913 (2016).[13] An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. §§ 404.1513(d), 416.913(d) (2016),[14] "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232. An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993). Germane reasons to discount an opinion include contradictory opinions and lack of support in the record. *Thomas*

---

[12]On March 27, 2017, these regulations were amended and the definitions of an acceptable medical source now appear in 20 C.F.R. §§ 404.1502(a), 416.902(a).

[13]On March 27, 2017, these regulations were amended and instructions on how to weigh evidence for cases filed before March 27, 2017 now appear in 20 C.F.R. §§ 404.1527, 416.927.

[14]On Marcy 27, 2017, these regulations were amended and the instructions on how to weigh "other sources" now appear at 20 C.F.R. §§ 404.1527(f), 416.927(f).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

*v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

The ALJ's reasons for rejecting Dr. Ballasiotes's opinion, are legally sufficient. The reasons are germane to Dr. Ballasiotes's opinion. As such, the ALJ did not error in his treatment of the opinion. This case is being remanded to address the physical impairments at step two, the ALJ need not address the psychological opinions upon remand if she finds that the step two physical impairments will have no effect on Plaintiff's the psychological limitations.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to determine whether the medical signs and laboratory findings support the finding of a medically determinable severe

impairment and whether that impairment(s) is severe at step two. The ALJ will call a medical expert to testify regarding Plaintiff's physical impairments and resulting limitations. The ALJ is then instructed to make new step three, four, and five determinations based on the new step two determination.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED August 31, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE